Anoush Hakimi (SBN 228858)
anoush@handslawgroup.com
Peter Shahriari (SBN 237074)
peter@handslawgroup.com
Ani Avetisyan (SBN 266679)
ani@handslawgroup.com
Laura Steven (SBN 332168)
laura@handslawgroup.com
**THE LAW OFFICE OF HAKIMI & SHAHRIARI**
1800 Vine Street
Los Angeles, CA 90028
Telephone: (888) 635-2250
Facsimile: (213) 402-2170

Attorneys for Plaintiff,
**JAMES SHAYLER**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| James Shayler, an individual, | Case No.:  2:20-cv-01882-RAO |
|       Plaintiff, | |
|    v. | Hon. Rozella A. Oliver |
| Ehab S. Yacoub, an individual; Lorine A. Mikhaeil, an individual; and Does 1-10, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
|      Defendants. | Date:      April 14, 2021<br>Time:     10:00 a.m.<br>Courtroom: 590 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ................................................................8

II.    RELEVANT FACTS...........................................................................10

III.   LEGAL STANDARD FOR SUMMARY JUDGMENT .........................13

IV.    PLAINTIFF HAS ESTABLISHED THE ELEMENTS OF HIS ADA

       CLAIM FOR VIOLATIONS RELATED TO THE LACK OF

       ACCESSIBLE PARKING, ROUTE(S), SIGNAGE, AND INTERIOR OF

       THE BUSINESS...............................................................................14

       A.    Plaintiff is Disabled ........................................................17

       B.    Defendants Own a Place of Public Accommodation ......................18

       C.    The Property Has Barriers That Can Be Readily Removed...........18

             1.    Lack of Accessible Route(s). ................................................20

                   a.  Due to Cracked/ Damaged Pavement ............................21

                   b.  Due to Excessive Slopes ..................................................21

             2.    Lack of Proper Signs.......................................................22

             3.    Lack of Accessible Designated Disabled Parking Space and

                   Adjacent Access Aisle ......................................................24

             4.    Lack of Accessible Business Interior................................26

       D.    Plaintiff Encountered Violations, and Is Deterred from

             Returning .......................................................................27

Case No. 2:20-cv-01882-RAO

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

V.  THE LACK OF ACCESSIBLE PARKING, ROUTES OF TRAVEL,

SIGNAGE, AND BUILDING INTERIOR IS UNLAWFUL UNDER

CALIFORNIA'S UNRUH CIVIL RIGHTS ACT ................................... 29

VI.  REMEDIES ...................................................................................... 30

A.  Injunctive Relief ............................................................. 30

B.  Statutory Damages .......................................................... 31

VII.  CONCLUSION .............................................................................. 32

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)................................................................14

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.,*
    603 F.3d 666 (9th Cir. 2010) ...................................................16

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)................................................................14

*Chapman v. Pier 1 Imports (U.S.) Inc.,*
    631 F.3d 939 (9th Cir. 2011) .......................................15, 16, 19

*Civil Rights Educ. & Enforcement Ctr. v. Hosp. Properties Trust,*
    867 F.3d 1093 (9th Cir. 2017) .................................................28

*Cullen v. Netflix, Inc.,*
    880 F. Supp. 2d 1017 (N.D. Cal. 2012)............................. 29, 30

*Doran v. 7-Eleven, Inc.,*
    524 F3d 1034 (9th Cir. 2008) .........................19, 20, 28, 29

*Fortyune v. American Multi-Cinema, Inc.,*
    364 F.3d 1075 (9th Cir. 2004) ...........................................30, 31

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)........................................................27, 28

*Moeller v. Taco Bell Corp.,*
    816 F. Supp. 2d 831 (N.D. Cal. 2011)......................................16

*Molski v. M.J. Cable, Inc.,*
    481 F.3d 724 (9th Cir. 2007) .............................................17, 31

*Rush v. Denco Enterprises, Inc.,*
    857 F. Supp. 2d 969 (C.D. Cal. 2012)......................................19

Case No. 2:20-cv-01882-RAO

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

1

## STATUTES, RULES, AND REGULATIONS

2

3

<u>ADA Standards for Accessible Design (ADAS)</u>

4

1991 ADAS § 3.5 ................................................................25

5

6

1991 ADAS § 4.3.2 .............................................................20

7

1991 ADAS § 4.3.2(1) ........................................................20

8

9

1991 ADAS § 4.3.7 .............................................................22

10

11

1991 ADAS § 4.3.8 .............................................................25

12

13

1991 ADAS § 4.5.3 .............................................................26

14

1991 ADAS § 4.6.3 .............................................................24

15

16

1991 ADAS § 4.6.4 .............................................................22

17

18

1991 ADAS § 4.13.5 ...........................................................26

19

1991 ADAS § 4.19.6 ...........................................................27

20

21

1991 ADAS § 5.4.2 .............................................................26

22

23

2010 ADAS § 302.1 ............................................................20

24

2010 ADAS § 302.2 ............................................................26

25

26

2010 ADAS § 303.3 ............................................................25

27

2010 ADAS § 303.4 ............................................................26

28

Case No. 2:20-cv-01882-RAO

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

2010 ADAS § 403.1 ...................................................................................... 21

2010 ADAS § 403.2 ...................................................................................... 21

2010 ADAS § 403.3 ...................................................................................... 21

2010 ADAS § 404.2.3 ................................................................................... 26

2010 ADAS § 502.3 ...................................................................................... 20

2010 ADAS § 502.3.2 ................................................................................... 25

2010 ADAS § 502.4 ...................................................................................... 24

2010 ADAS § 502.6 ...................................................................................... 22

2010 ADAS § 603.3 ...................................................................................... 27

California Building Code (CBC)

2010 CBC § 1115B.4.1.3(3.1) .................................................................... 26

2010 CBC § 1115B.8.1 ................................................................................ 27

2010 CBC § 1129B.3 .............................................................................. 23, 25

2010 CBC § 1129B.4 .................................................................................... 23

2010 CBC § 1133B.5.1 ................................................................................. 22

2019 CBC § 11B-502.2 ................................................................................ 25

2019 CBC § 11B-502.6.4 ............................................................................. 23

Case No. 2:20-cv-01882-RAO

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

California Civil Code

Cal. Civil Code § 51(f)..............................................................29

Cal. Civil Code § 52(a) ........................................................31, 32

Cal. Civ. Code § 55.56(a) ...........................................................31

Cal. Civ. Code § 55.56(b) ......................................................31, 32

Cal. Civ. Code § 55.56(e) ......................................................31, 32

Code of Federal Regulations

28 C.F.R. 35.151(B) ....................................................................19

Federal Rules of Civil Procedure

FRCP 56 .......................................................................................14

United States Code

42 U.S.C. § 12182(a) ........................................................14, 15, 16

42 U.S.C § 12182(b)(2)(A)(iv) .................................................16, 17

42 U.S.C. § 12183(a)(2) .............................................................16, 17

42 U.S.C. § 12188(a) ...................................................................17, 30

42 U.S.C. § 12188(a)(1)....................................................................27

42 U.S.C. § 12188(a)(2).....................................................................30

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

## I.    PRELIMINARY STATEMENT

This matter involves a disabled senior citizen's multiple attempts to visit a restaurant/eatery named Fresh Pita Organic Express (the "business"), located at 4315 Sepulveda Boulevard, Culver City, California 90230 (the "Property"), which is not accessible to people with disabilities.

Plaintiff James Shayler ("Plaintiff") is an elderly man suffering from spinal issues, severe leg pain, and sciatica, which prohibit him from standing for longer than fifteen (15) minutes. He also has diminished use of his left arm and hand. On four (4) separate occasions, he had difficulty visiting the Property simply because Defendants Ehab S. Yacoub and Lorine A. Mikhaeil ("Defendants") refuse to perform the routine, common remediations necessary to make the Property accessible to all in accordance with the Americans with Disabilities Act of 1990 ("ADA") (42 U.S.C. § 12181, *et seq.*) and the Unruh Civil Rights Act ("UCRA") (Cal. Civ. Code § 51, *et seq.*).

Plaintiff moves for summary judgment because there is no dispute that, as an individual with disabilities, he faced/faces barriers to access at Defendants' Property. There are clear violations at the Property with respect to parking, routes of travel, signage, and the business interior.

Plaintiff had great difficulty disembarking from the car and walking to and entering the business given the hazards at the Property. As a disabled person who

has trouble walking, and who needs and uses a cane or walker, Plaintiff would not be able to safely disembark from the car and walk into the business given the excess slopes and changes in level in the parking lot and the route connecting the designated disabled parking space (and/or access aisle) to the business entrance. Also, Plaintiff is not able to unload his mobility device(s) and safely disembark from his vehicle when the designated disabled parking space and adjacent access aisle are not long and/or wide enough. Additionally, when there is inadequate signage, it is difficult for Plaintiff to determine where to park, and non-disabled persons are not adequately deterred from parking in the designated disabled parking space and/or adjacent access aisle. It is difficult for Plaintiff to access the business if he is required to use a parking space other than the designated space.

Plaintiff is also aware of the conditions subsequently identified by his investigator, which conditions would also jeopardize his ability to safely access the Property. Although he wishes to return to the Property to enjoy the shawarma at Fresh Pita Organic Express, which is conveniently located near his house, he reasonably feels that he cannot safely do so until the violations are remediated. Thus, Plaintiff seeks an order requiring Defendants to remediate existing violations, including by: leveling the parking lot; repaving the parking and route(s) of travel throughout; providing designated disabled parking and an adjacent access aisle of appropriate size; posting and/or painting proper signage; securing the mats

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

inside and outside of the building; widening the business entrance door; smoothing the change in level at the business entrance; and adjusting the placement of the toilet tissue dispenser, rear grab bar, and restroom mirror.

Plaintiff also seeks statutory damages totaling $20,000.  Pursuant to the UCRA, he seeks $4,000 per incident, for four actual visits and one deterred visit.

Plaintiff respectfully requests that the Court grant his motion and enter summary judgment in his favor.

## II.    RELEVANT FACTS

Plaintiff is a disabled individual with severe leg and arm issues.  UF 1. Plaintiff has multiple levels of diffuse disc bulges in his spine and a pinched nerve in his spine.  UF 2.  Plaintiff has sciatica, which causes him to experience pain in his lower spine and right leg.  UF 3.  Plaintiff has difficulty walking and standing for longer than fifteen (15) minutes; and, sometimes, the pain is so severe, he cannot be mobile (i.e., cannot walk around) at all.  UF 4.  Plaintiff uses a cane daily to help him walk, and when his pain is especially bad, he uses a walker instead.  UF 5.  He also has limited use of one hand/arm following an injury on the job and subsequent surgery.  UF 6.  Because Plaintiff has severely impaired mobility, and relies on a walker or cane, he needs ADA compliant routes of travel, parking, signage, business interiors, and restroom facilities for full and equal

access to public accommodations.  UF 7.  Considering his disabilities, the State of California has issued him a permanent disabled person parking placard.  UF 8.

Defendants own the property located at 4315 Sepulveda Boulevard, Culver City, California 90230, which houses a restaurant/eatery named Fresh Pita Organic Express which is open to the public.  UFs 9-10.  In February 2019, April 2019, November 2019, and December 2019, Plaintiff visited the Property with the intent to patronize the business, but he experienced difficulty, humiliation, and/or frustration upon encountering various barriers.  UF 11.  When Plaintiff visited the Property, the pavement was not smooth, and there were changes in level and excess slopes in the route connecting the designated disabled parking space (and/or access aisle) to the business entrance, which put him at risk of tripping with his cane or walker.  UF 12.  Plaintiff needs adequate space to disembark from the vehicle and unload his mobility device(s), but when Plaintiff visited the Property, the designated disabled parking space and adjacent access aisle for loading and unloading were not long enough, and the designated disabled parking space also was not wide enough.  UF 13.  When Plaintiff visited the Property, the designated disabled parking space was not clearly marked and lacked adequate signage, which made it difficult for him to determine where to park, and did not effectively deter others who are not disabled from parking in the designated disabled parking space and/or access aisle.  UF 14.  Plaintiff had difficulty using the restroom because the

Case No. 2:20-cv-01882-RAO

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

toilet tissue dispenser was located too far from the toilet, and the mirror was placed too high off the floor.  UF 15.

Plaintiff filed his Complaint on February 26, 2020, alleging violations of the ADA and the UCRA.  UF 16.  On August 18, 2020, Plaintiff's investigator visited the Property and photographed the conditions thereon.  UF 17.  After the identification of additional barriers to access at the Property and/or the business, Plaintiff filed a First Amended Complaint ("FAC") on October 26, 2020.  UF 35.

Defendants produced a report prepared by their Certified Access Specialist (CASp), which identified twenty-three (23) violations in need of repair with respect to parking, routes of travel, and improper signage.  UF 40.  Defendant Lorine Mikhaeil admitted at her deposition that several violations exist at the Property that could be remediated.  UFs 41-48.  According to Plaintiff's investigator, Defendants' CASp, and Defendant Mikhaeil's testimony, the following barriers to access exist at the Property:  the access aisle is improperly marked/painted; there is severely damaged pavement in the designated disabled parking space, adjacent access aisle, and route; there is no sign warning that vehicles parked in authorized places will be towed; there is no blue sign with the International Symbol of Accessibility ("ISA") at the designated disabled parking space; and the surface signage depicting the ISA is faded.  UFs 18, 22, 23, 26-28.

Plaintiff's investigator and Defendants' CASp also agreed that the designated disabled parking space measures less than eighteen feet (18') long; the designated disabled parking spaces has slopes exceeding 2%; the route from the access aisle to the business has slopes exceeding 5%; and there is no accessible pedestrian route provided.  UFs 19, 21, 24, 25.

Plaintiff is aware of the additional barriers to access observed by his investigator, including the violations relating to the slopes in the designated disabled parking space, damaged pavement in the parking lot, failure to provide an accessible route, unsecured mats in and around the business, changes in level at the business entrance, insufficient door clearance space at the business entrance, and grab bars placed too high in the restroom.  UF 36.

Thus, although he would like to return to the Property, he is deterred from doing so, as he does not feel it is safe for him to visit unless/until the violations are remediated.  UFs 38.  The Property is conveniently located about ten (10) minutes from his house by car, and he plans and intends to visit again once the existing barriers to access are removed.  UF 39.  Plaintiff is entitled to relief on his ADA and UCRA claims, as numerous violations exist at the Property.

## III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. Proc. (FRCP) 56. To prevail on summary judgment, the moving party need not disprove the opposing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). A disputed fact is "material" where the resolution of that fact "might affect the outcome of the suit under the governing law," and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 250-252 (mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient; there must be evidence on which a jury could find by a preponderance of the evidence that the non-movant is entitled to a verdict).

## IV. PLAINTIFF HAS ESTABLISHED THE ELEMENTS OF HIS ADA CLAIM FOR VIOLATIONS RELATED TO THE LACK OF ACCESSIBLE PARKING, ROUTE(S), SIGNAGE, AND INTERIOR OF THE BUSINESS

Under Title III of the Americans with Disabilities Act of 1990 ("ADA"), the general rule is that "[n]o individual shall be discriminated against on the basis of a

disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

The ADA applies not just to intentional discrimination, but also to thoughtlessness and indifference:

> Its passage was premised on Congress's finding that discrimination against the disabled is most often the product, not of invidious animus, but rather of thoughtlessness and indifference, of benign neglect, and of apathetic attitudes rather than affirmative animus.  The concept of "discrimination" under the ADA does not extend only to obviously exclusionary conduct – such as a sign stating that persons with disabilities are unwelcome or an obstacle course leading to a store's entrance.  Rather, the ADA proscribes more subtle forms of discrimination – such as difficult-to navigate restrooms and hard-to-open doors – that interfere with disabled individuals' "full and equal enjoyment" of places of public accommodation.

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944-945 (9th Cir. 2011) (internal quotes and citations removed for readability).

To succeed on his Title III, ADA claim, "a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc*., 603 F.3d 666, 670 (9th Cir. 2010), *citing Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). "The third element – whether plaintiffs were denied public accommodations on the basis of disability – is met if there was a violation of applicable accessibility standards." *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 847 (N.D. Cal. 2011), *citing Chapman*, 631 F.3d at 945. This is because discrimination is defined both as either a failure to ensure that alterations are "readily accessible to and useable by persons with disabilities," and, where there are no alterations, "a failure to remove architectural barriers … in existing facilities … where such removal is readily achievable." 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv).

Accordingly, the elements of a discrimination claim under the ADA are:

1. Plaintiff must be disabled. 42 U.S.C. § 12182(a).

2. Defendants' facility must be a place of "public accommodation," and, therefore, governed by Title III of the ADA. *Id*.

3. Defendants must be responsible parties, i.e., owners, operators, lessors, or lessees. *Id.*

4. Defendants' facility must have either undergone an alteration that did not comply with the accessibility standards, or contain an easily removable barrier that the defendant failed to remove. 42 U.S.C. §§ 12183(a)(2), 12182(b)(2)(A)(iv).

5. Plaintiff must have actually encountered an unlawful barrier, or have reasonable grounds for believing that he is about to be subjected to discrimination as he would encounter such a barrier. 42 U.S.C. § 12188(a).

As discussed below, Plaintiff's civil rights were violated because Defendants failed to provide accessible parking, route(s) of travel, signage, and building interior. Plaintiff discusses each element of his claim below.

## A.      Plaintiff is Disabled

Plaintiff has multiple levels of diffuse disc bulges in his spine, a pinched nerve, and sciatica, which cause him to experience pain in his spine and right leg. UFs 2-3. He has difficulty walking and standing for longer than fifteen (15) minutes; and, sometimes, the pain is so severe that he cannot be mobile (i.e., cannot walk around) at all. UF 4. Plaintiff uses a cane daily to assist with

Case No. 2:20-cv-01882-RAO

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

walking, given his severe leg issues.  UF 5.  When the pain is especially bad,

Plaintiff uses a walker instead.  *Id.*

Plaintiff also has very limited use of his left arm and hand as a result of an

injury on the job as a firefighter years ago and the subsequent surgery.  UF 6.  His

left hand has atrophied, and he cannot put much pressure on his left arm/hand.  *Id.*

As a result of his permanent disabilities, the State of California issued

Plaintiff a permanent disabled person parking placard.  UF 8.  Thus, Plaintiff is

clearly disabled and entitled to the protections of the ADA.

## B.      Defendants Own a Place of Public Accommodation

Defendants have admitted, both in their Answer to the Complaint and during

their depositions, that they own the Property, which houses a business that is open

to the public.  UFs 9-10.  There is no dispute as to this element.

## C.      The Property Has Barriers That Can Be Readily Removed

There can be no genuine dispute that several barriers at the Property remain

and can easily be removed.

"To determine if Plaintiff describes an 'architectural barrier' the Court must

turn to the ADA Accessibility Guidelines for Buildings and Facilities ('ADAAG').

If an element does not meet or exceed ADAAG standards, it is considered a barrier

to access."  *Rush v. Denco Enterprises, Inc.*, 857 F. Supp. 2d 969, 973 (C.D. Cal.

2012) (internal cites omitted).  "Any element in a facility that does not meet or

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

exceed the requirements set forth in the ADAAG is a barrier to access." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (identifying this as the formal position of the Department of Justice). These are "objective" and "precise" standards, and "the difference between compliance and noncompliance" is "often a matter of inches." *Id.*

A property that has undergone alteration since January 26, 1992, shall, to the "maximum extent feasible, be altered in such a manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities." 28 C.F.R. 35.151(b). Upon information and belief, the Property has been altered since 1992. ECF Doc. 44, FAC ¶ 41.

The Ninth Circuit has opined that a plaintiff may recover under the ADA for barriers personally encountered, as well as those subsequently uncovered during discovery, so long as the barriers are relevant to the person's disability. *Doran v. 7-ELEVEN, Inc.*, 524 F.3d 1034, 1043-1044 (9th Cir. 2008). Specifically, the Ninth Circuit held:

> … he or she may conduct discovery to determine what, if any, other barriers affecting his or her disability existed at the time he or she brought the claim. This list of barriers would then in total constitute the factual underpinnings of a single legal

inquiry, namely, the failure to remove architectural barriers in violation of the ADA ….

*Doran*, 524 F.3d at 1043-1044.  Following an inspection, Plaintiff filed his FAC, incorporating the additional barriers discovered.  UF 35.  Plaintiff now seeks summary judgment in his favor, given that clear barriers to access exist in violation of the ADA, and there has not been (cannot be) any (credible) assertion or showing that the barriers cannot be readily removed.

### 1.      Lack of Accessible Route(s)

Section 4.3.2 of the 1991 ADA Standards for Accessible Design states:  "At least one accessible route within the boundary of the site shall be provided from … the accessible parking … to the accessible building entrance they serve."  1991 ADAS § 4.3.2(1).  Access aisles "shall adjoin an accessible route."  2010 ADAS § 502.3.  Here, there was/is no accessible pedestrian route(s) leading from the parking area/ access aisle to the front entrance of the business, according to the findings of both Plaintiff's investigator and Defendants' CASp.  UF 25.

### a.      Due to Cracked/ Damaged Pavement

There is no accessible route connecting the designated disabled parking space/ access aisle to the business entrance; rather, the route has severely damaged pavement with changes in level.  Section 302.1 of the 2010 ADA Standards for Accessible Design provides:  "floor and ground surfaces shall be stable, firm, and

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

slip-resistant." 2010 ADAS § 302.1. The requirements of Section 302.1 apply to walking surfaces that are part of an accessible route. 2010 ADAS §§ 403.1, 403.2.

Photographs taken by Plaintiff's investigator during his inspection of the Property on August 18, 2020 reveal that the route from the designated disabled parking space to the restaurant/eatery entrance has damaged, uneven ground with excess changes in level. UF 17. Defendant Mikhaeil testified that the route of travel contains changes in level that can be remediated. UFs 23, 41. Defendants' CASp also found violations with respect to the overall lack of an accessible route of travel, and with respect to the damaged, uneven ground with changes in level. UFs 23, 41. Plaintiff encountered these conditions, which put him at increased risk of tripping with his cane or walker. UF 12. Thus, the parties agree that there is damaged ground with changes in level in the route of travel that can be remediated.

### b.    Due to Excessive Slopes

There is no accessible route of travel from the designated disabled parking space and adjacent access aisle to the entrance of the Fresh Pita Organic Express restaurant/eatery because there are excessive slopes on the pavement. Section 403.3 of the 2010 ADA Standards for Accessible Design provides: "The running slope of walking surfaces shall not be steeper than 1:20 [5%]. The cross slope of walking surfaces shall not be steeper than 1:48 [2.08%]." 2010 ADAS § 403.3; *see also* 2019 California Building Code (CBC) § 11B-403.3 (providing same).

Section 4.3.7 of the 1991 Standards for Accessible Design provides: "An accessible route with a running slope greater than 1:20 [5%] is a ramp and shall comply with 4.8.  Nowhere shall the cross slope of an accessible route exceed 1:50 [2%]."  1991 ADAS § 4.3.7; *see also* 2010 CBC § 1133B.5.1.

Photographs taken by Plaintiff's investigator, during his inspection of the Property on August 18, 2020, reveal slopes exceeding 5%, including slopes as high as 5.9%, on the route(s); however, no compliant ramp is provided.  UF 24.  Defendants' CASp also found the same violation, identifying slopes as high as 6.4% on the route of travel.  UF 24.  Plaintiff encountered these slopes, which put him at risk of tripping with his cane or walker.  UF 12.

Plaintiff respectfully requests that this Court grant summary judgment as to the route of travel violations.  *See* Sections IV.C.1.a., IV.C.1.b., *supra*.

## 2.    Lack of Proper Signs

Section 502.6 of the 2010 Standards for Accessible Design states: "Parking space identification signs shall include the International Symbol of Accessibility." 2010 ADAS § 502.6; *see also* 1991 ADAS § 4.6.4.  Photographs taken by Plaintiff's investigator confirm that there is no blue sign with the ISA posted at the designated disabled parking space; instead, the blue sign with the ISA is posted in front of an unmarked, inaccessible space.  UF 27.  Defendants' CASp identified

this violation in his report.  UF 27.  Mikhaeil acknowledged that this violation existed and could be remediated.  UFs 27, 43.

The California Building Code requires the surface of the designated disabled parking space to be painted with the ISA.  2019 CBC § 11B-502.6.4; 2010 CBC § 1129B.4.  The parties agree that the ISA in the designated disabled parking space is extremely faded, and that the symbol is therefore illegible.  UFs 28, 44.

The California Building Code requires property owners to post an additional sign warning that unauthorized vehicles parked in designated disabled parking spaces will be towed.  2019 CBC § 11B-502.8; 2010 CBC § 1129B.4.  There are no such signs at the entrance of the parking area, or at the designated disabled parking space.  UF 26.  Defendant Mikhaeil acknowledged the presence of this violation at her deposition, and admitted it could be remediated.  UFs 26, 42.

The words "NO PARKING" are supposed to be painted on the ground surface of the access aisle.  California Business Code section 1129B.3 states that "the words NO PARKING shall be painted on the ground within each five-foot (1524 mm) loading and unloading access aisle."  2010 CBC § 1129B.3.  Plaintiff's investigator, and Defendants' CASp, confirmed that the words "NO PARKING" were not printed on the access aisle as required.  UF 18.  Defendant Mikhaeil also acknowledged this problem, and admitted that it could be remediated.  UF 46.

Plaintiff needs to park in the designated disabled parking space, and it is difficult for him to determine where to park when the designated disabled parking space is not clearly marked.  UF 14.  Also, other people who are not disabled tend to park in the designated disabled parking space and/or access aisle, which lack adequate signage warning against unauthorized parking.  *Id.*  It is exceedingly difficult for Plaintiff to disembark from the car when he has to use a non-disabled parking space (without an adjacent access aisle), instead of a designated disabled parking space (with an adjacent access aisle).  *Id.*  The proper signs were not posted when Plaintiff visited the Property.  *Id.*  Further, there is no directional signage indicating an accessible route of travel.  UF 29.

### 3. Lack of Accessible Designated Disabled Parking Space and Adjacent Access Aisle

The designated disabled parking space at the Property has slopes in excess of 2%.  Section 4.6.3 of the 1991 ADA Standards for Accessible Design provides: "The maximum surface slope within accessible parking areas or adjacent access aisles cannot exceed 2% slope in any direction."  1991 ADAS § 4.6.3; 2010 ADAS § 502.4.  Plaintiff's investigator and Defendants' CASp identified slopes as high as 6.8% in the designated disabled parking space.  UF 21.  Plaintiff has trouble disembarking from the vehicle and unloading his walker or cane when he is on a sloped surface, and he has difficulty traversing on sloped surfaces.  UF 36.

Case No. 2:20-cv-01882-RAO

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

The designated disabled parking space and adjacent access aisle also contain dangerous changes in level.  The access aisle is considered part of the route of travel and, as such, must be accessible.  1991 ADAS § 3.5.  There can be no change in level greater than one-half inch (1/2") without a proper "curb ramp, ramp, elevator, or platform lift."  1991 ADAS § 4.3.8; *see also* 2010 ADAS § 303.3.  Plaintiff's investigator and Defendants' CASp agree that this violation exists.  UF 23.  Defendant Mikhaeil also acknowledged the presence of this barrier, and admitted that it could be remedied.  UFs 23, 45.  Plaintiff has challenges maneuvering with his mobility device(s) on such damaged pavement, because he could trip and/or fall if his cane, walker, and/or feet catch on the ground.  UF 36.

The designated disabled parking space must measure eighteen feet (18') long.  2019 CBC § 11B-502.2; 2010 CBC § 1129B.3.  Here, it measures thirteen feet, six inches (13' 6") long.  UF 19.  Defendants' CASp also found this violation. UF 19.  The access aisle must be the same length as the designated disabled parking space.  2010 ADAS § 502.3.2.  Here, the access aisle measures seventeen feet, eight and one-half inches (17' 8.5") long.  UF 20.  Plaintiff did not have enough space to disembark from the car and unload his mobility device(s).  UF 13.

Accordingly, Plaintiff respectfully requests that the Court grant him summary judgment with respect to the various violations in the parking lot.

### 4.    Lack of Accessible Business Interior

The area in and around the business is not compliant due to unsecured mats, excess changes in level, inadequate door clearance, and several restroom issues.

Carpets or mats shall be "securely attached."  1991 ADAS § 4.5.3; 2010 ADAS § 302.2.  Photographs taken by Plaintiff's investigator demonstrate that mats inside and outside of the business, on either side of the entrance door, are not secured.  UF 31.  The unsecured mats can easily buckle and roll.  *Id.*  Plaintiff is at risk of tripping on these unsecured mats with his cane or walker.  UF 36.

Changes in level greater than one-half inch (1/2") "shall be ramped."  1991 ADAS § 5.4.2; 2010 ADAS § 303.4.  Here, there is a change in level at the doorway/entrance of the Fresh Pita Organic Express restaurant/eatery measuring three-fourths of an inch (3/4").  UF 30.  Plaintiff can easily trip if his cane, walker, and/or foot catch on the change in level.  UF 36.  Doorways "shall have a minimum clear opening of 32 in (815 mm) with the door open 90 degrees."  1991 ADAS § 4.13.5; *see also* 2010 ADAS § 404.2.3.  The doorway of the restaurant/eatery has a clearance of only thirty inches (30").  UF 32.  Plaintiff's walker cannot fit comfortably through a doorway that is too narrow.  UF 36.

In the restroom, grab bars must extend thirty-three inches (33") above and parallel to the floor.  2010 CBC § 1115B.4.1.3(3.1).  Photographs taken by Plaintiff's investigator reveal that the grab bar on the wall next to the toilet is not

Case No. 2:20-cv-01882-RAO

thirty-three inches (33") above the floor; it is instead positioned at thirty-six inches (36") above the floor.  UF 34.  Mirrors located above lavatories or countertops "shall be installed with the bottom edge of the reflecting surface 40 inches … maximum above the finish floor or ground."  2010 ADAS § 603.3; 1991 ADAS § 4.19.6; 2019 CBC § 603.3; 2010 CBC § 1115B.8.1.  Plaintiff's investigator observed that the bottom edge of the reflecting surface of the mirror is positioned approximately fifty-two inches (52") above the floor.  UF 33.

Thus, Plaintiff respectfully requests that the Court grant summary judgment with respect to the various violations at the Property.

### D.    Plaintiff Encountered Violations, and Is Deterred from Returning

A plaintiff is entitled to injunctive relief under the ADA if he "is being subjected to discrimination on the basis of disability," or "has reasonable grounds for believing [he] is about to be subjected to discrimination."  42 U.S.C. § 12188(a)(1).  Thus, a plaintiff has standing to seek injunctive relief based on barriers personally encountered, or those he reasonably believe he will encounter.

Generally, a plaintiff must meet three requirements in order to establish standing:  (1) the plaintiff must have "suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) there must be a "causal connection between the injury and the conduct complained of"; and (3) it must be "likely, as

opposed to merely speculative, that the injury will be redressed by a favorable

decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).

In the context of civil rights statutes, such as the ADA, courts are instructed

to take a "broad view" of constitutional standing. *Doran*, 524 F.3d at 1039-40.

With regard to ADA discrimination claims, the Ninth Circuit recognizes a

deterrent effect doctrine. In connection with the requirement that the injury be

actual or imminent, "a disabled individual who is currently deterred from

patronizing a public accommodation due to a defendant's failure to comply with

the ADA has suffered 'actual injury.'" *Doran*, 524 F.3d at 1040. In other words,

injury is imminent when a plaintiff "is threatened with harm in the future because

of existing or immediately threatened non-compliance with the ADA." *Id.*

The Ninth Circuit further clarified that a plaintiff need not personally

encounter a barrier to demonstrate injury supporting standing. Instead, "[i]t is the

plaintiff's 'actual knowledge' of a barrier, rather than the source of that

knowledge, that is determinative." *Civil Rights Educ. & Enforcement Ctr. v.

Hosp. Properties Trust*, 867 F.3d 1093, 1099 (9th Cir. 2017). Indeed, "[o]nce a

disabled individual has encountered or become aware of alleged ADA violations

that deter his patronage of[,] or otherwise interfere with his access to[,] a place of

public accommodation, he has already suffered an injury in fact traceable to the

defendant's conduct and capable of being redressed by the courts." *Doran*, 524

28

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

F.3d at 1042, n.5.  In other words, once a plaintiff encounters one barrier at a site, a plaintiff can sue to have all barriers related to the plaintiff's disability removed, regardless of whether the plaintiff personally encountered them.  *Id.* at 1039-1040.

Plaintiff encountered barriers which caused him difficulty, humiliation, and/or frustration.  UF 11.  Plaintiff is aware of the additional barriers observed by his investigator, including those related to slopes in the designated disabled parking space; damaged pavement in the parking lot; failure to provide an accessible route; unsecured mats in and around the business (building); changes in level at the business entrance; insufficient door clearance space at the business entrance, and grab bars placed too high in the restroom.  UF 36.  He hopes to return, and intends/plans to do so, as soon as the barriers are removed, as the Property is conveniently located about ten (10) minutes from his home by car, and he enjoys the shawarma at Fresh Pita Organic Express.  UF 39.

## V.   THE LACK OF ACCESSIBLE PARKING, ROUTES OF TRAVEL, SIGNAGE, AND BUILDING INTERIOR IS UNLAWFUL UNDER CALIFORNIA'S UNRUH CIVIL RIGHTS ACT

The UCRA provides that "a violation of the right of any individual under the Americans with Disabilities Act of 1990 shall also constitute a violation of this section."  Cal. Civil Code § 51(f).  "A violation of the ADA is, by statutory definition, a violation of both the Unruh Act and the DPA."  *Cullen v. Netflix,*

*Inc.*, 880 F. Supp. 2d 1017, 1023 (N.D. Cal. 2012).  "Because the Unruh Act is coextensive with the ADA and allows for monetary damages, litigants in federal court in California often pair state Unruh Act claims with federal ADA claims." *Molski*, 481 F.3d at 731.  As discussed in Section IV, *supra*, Defendants violated the ADA.  Thus, there has been a *per se* violation of the UCRA.

## VI.   REMEDIES

There are no genuine disputes of material fact remaining, and Plaintiff has established his ADA and UCRA claims.  Plaintiff is entitled to injunctive relief under the ADA, and statutory damages of $20,000 under the UCRA.

### A.     Injunctive Relief

Plaintiff seeks injunctive relief pursuant to 42 U.S.C. § 12188(a).  The injunctive relief "shall include an order to alter facilities to make such facilities readily accessible to and useable by individuals with disabilities" to the extent required by the ADA.  42 U.S.C. § 12188(a)(2).

As set forth above, Plaintiff may seek recourse for barriers he personally encountered, as well as for those he is aware of that cause him to be reasonably deterred from visiting the public accommodation.  *See* Section IV.D., *supra*.  A plaintiff seeking injunctive relief must also show "a sufficient likelihood that [the plaintiff] will again be wronged in a similar way … [t]hat is, … a real and immediate threat of repeated injury."  *Fortyune v. American Multi-Cinema, Inc.*,

364 F.3d 1075, 1081 (9th Cir. 2004) (internal quotations omitted).

Here, there is every indication that the Property will remain in, or return to, a non-compliant state in the future if an appropriate injunctive order is not issued. During this case, Defendants have failed to remove the aforementioned/identified barriers, removal of which is readily achievable.  Plaintiff will not be able to access the Property without difficulty, humiliation, and/or frustration if Defendants are not ordered to remediate the existing violations.  *See* UF 11. Accordingly, an injunction is appropriate to ensure that Defendants comply with the law, and that Plaintiff can enjoy full access of the premises.  Thus, the Court should order Defendants to comply with (and maintain the Property in compliance with) the ADA and UCRA, and to remove the existing barriers at the Property.

## B.  Statutory Damages

Plaintiff also seeks statutory damages totaling $20,000 under the UCRA; $4,000 for each of four actual visits and one deterred visit.  *See* UFs 11, 38.

Violations of the UCRA can result in the award of statutory damages "if the violation denied the plaintiff full and equal access to the place of public accommodation on a particular occasion."  Cal. Civ. Code § 55.56(a).  A denial of full and equal access takes place where a plaintiff "personally encountered" the violation, and it resulted in "difficulty, discomfort or embarrassment."  Cal. Civ. Code § 55.56(b).  Under the Civil Code, the plaintiff may recover minimum

statutory damages of $4,000 for "each offense" (Cal. Civ. Code § 52(a)), which has been defined as "each particular occasion that the plaintiff was denied full and equal access…." Cal. Civ. Code § 55.56(e). A plaintiff can recover for both actual encounters and occasions where personal knowledge of a barrier deterred the plaintiff from attempting patronage. Cal. Civ. Code § 55.56(b).

Here, Plaintiff encountered and/or has knowledge of the existing violations (*see* Sections IV.C., IV.D., *supra*), including excess slopes in the disabled parking space and route; damaged pavement in the parking lot and route; failure to provide an accessible route; inadequate signage; unsecured mats; changes in level, and insufficient door clearance space, at the business entrance; and improper placement of the grab bars, mirror, and toilet tissue dispenser. UFs 12-15, 36. Accordingly, Plaintiff is deterred from visiting the Property until violations are remediated.

## VII.   CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court grant his motion, issue injunctive relief, and award judgment in favor of Plaintiff and against Defendants in the amount of $20,000.

Dated: March 17, 2021            THE LAW OFFICE OF HAKIMI & SHAHRIARI

By: ___/s/ Anoush Hakimi_____
      Anoush Hakimi, Esq.
      Attorneys for Plaintiff James Shayler